THOMPSON and others *v.* MEMPHIS, S. & B. R. Co. and others.

*(District Court, N. D. Mississippi, W. D.   June 16, 1885.)*

RAILROAD COMPANIES—CONTRACT TO ISSUE BONDS—MORTGAGE—CERTIFICATES—LIEN FOR MATERIAL AND LABOR USED IN CONSTRUCTING ROAD.

> Rights of the holders of certificates entitling them to bonds secured by mortgage considered, and *held* not to entitle them to a first lien as against those who furnished labor and material for the construction of the road.

In Equity.

*J. W. Clapp* and *J. W. C. Watson,* for complainants.

*T. W. Harris, J. T. Faut, R. S. Stith, M. Green, W. L. Nugent,* and *Minor Meriweather,* for defendants.

HILL, J.   This cause is submitted upon bill, amended bill, cross-bills, answers, exhibits, and proofs which are very voluminous, and present quite a number of intricate questions for solution.   These

questions have been very thoroughly argued by the learned counsel representing the respective interests involved, and have received all the consideration of which I am capable, and by which I have been brought to the conclusions hereinafter stated.

The facts, as shown by the pleadings and proofs, and admitted by counsel, necessary to be stated to an understanding of the rights of the respective parties, are briefly as follows:

A corporation created under the acts of the legislatures of the states of Tennessee, Mississippi, and Alabama, under the name of the Selma, Marion & Memphis Railroad Company, for the purpose of constructing and operating a railway from Memphis, in Tennessee, to Selma, in Alabama, under the rights conferred by the charters granted them, located its line of railway from these designated points, and obtained the right of way as far as it could be done, and proceeded to construct portions of its road-bed, and completed and equipped a portion of the railway in Alabama. To raise the means for what had been done, and contemplated to be done, the corporation issued its bonds with interest coupons attached. For want of means the enterprise failed, the bondholders proceeded in the circuit court of the United States for west Tennessee and obtained a decree of foreclosure of the mortgage executed to secure the payment of these bonds and interest coupons. Under this decree a sale of all the property, real and personal, and franchises belonging to said corporation, and all of which were conveyed by said mortgage, were sold and bid off by J. J. Busby, one of the complainants in that suit, for himself and co-complainants, at the sum of $10,000, which sale was confirmed by the court and the title rested in the purchasers. Upon the completion of this purchase the purchasers, under the authority of the laws of Tennessee and Mississippi, formed themselves into a corporate body known as the Memphis, Holly Springs & Selma Railroad Company, and as such relinquished to parties in Alabama, who held superior rights to all the property, etc., in Alabama, all right and claim thereto; and thereafter confined its claim to that portion of the property, rights, etc., from Memphis to the Alabama line. The new corporation proceeded to fix its capital stock at $1,000,000, and to estimate the value of the property, etc., so purchased at the sum of $263,000, to be divided into shares of $100 each, to be divided among the purchasers according to the interest of each, and to be held and treated as so much paid-up capital stock not subject to call, certificates of which were executed and delivered to the respective shareholders.

The corporation having been fully organized by the election of the necessary officers, and the adoption of a code of by-laws, a deed of conveyance was executed by the purchasers at the foreclosure sale, and the title to all the property and franchises so purchased was vested in the corporation. On the first day of June, 1881, a resolution was passed by the stockholders of the corporation authorizing the president and directory, for the purpose of raising money for the construction and equipment of the railway, and expressly to be for no other purpose, to issue bonds, with interest coupons attached, and a mortgage upon the property and franchises of the company to secure their payment. Nothing was done under this authority, other than a resolution of the directory authorizing the president and finance committee to execute the bonds and mortgage, until the second day of August, 1881, when, by another resolution of the stockholders, in convention assembled, the former resolution was amended so as to authorize the amount of bonds and coupons to be issued for the former resolution, and no other, to be $3,500,000, and to be payable January 1, 1921. The proceedings under the resolution of August 2, 1881, constitutes the only authority for the execution of bonds and mortgages which needs be considered.

It is admitted that some time prior to the meeting in August, 1881, a change

was made in the officers of the corporation, by which Fred. Wolffe, who had become a stockholder, was made president of the company, and M. Calm secretary.   At the meeting of the stockholders on the second of August, 1881, the name of the corporation was changed to that of the Memphis, Selma & Brunswick Railroad Company.   Some few other changes were made, but of no importance, in reference to the questions under consideration.   Prior to the sixth of July, 1881, the stockholders placed their certificates of capital stock in the hands of J. J. Busby, to be sold by him to W. M. Forrest, one of 'heir number, at 25 cents on the dollar, which was paid by Forrest to Busby, and by him paid to the stockholders, and the certificates of stock were then delivered to Forrest as the holder.

On the sixth day of July, 1881, a contract was entered into between Forrest and Wolffe, which was reduced to writing and signed by both parties, in which Forrest agreed to sell, and Wolffe to purchase for himself and those associated with him, the entire capital stock in said corporation, and for which Wolffe agreed, as soon as the bonds could be lawfully issued, to procure first mortgage bonds to the amount of $263,000, to be secured by a mortgage conveying all the property and franchises of the company.   The other provisions in this contract need not be stated.   Upon the execution of this agreement Forrest delivered the certificates of stock to Wolffe, and received from Wolffe a certificate for each bond, to be delivered in the following form:

"MEMPHIS, SELMA & BRUNSWICK RAILROAD COMPANY—FIRST MORTGAGE
                                      BONDS.
"*Total issue*, $3,500,000.                                           $1,000 *each*.
"This is to certify that William M. Forrest is entitled to one bond of one thousand dollars, with coupons thereto attached, No. ——— of first mortgage bonds of the Memphis, Selma & Brunswick Railroad Company, dated July 1, 1882, and bearing interest at rate of six per cent. per annum, payable semi-annually, which will be delivered to him, or order, upon the surrender of this certificate, as soon as said mortgage is executed and said bonds engraved.

"Witness the seal of the company, and the signature of the president and secretary, at Memphis, Tennessee, this first day of July, 1882.
                                            "FRED. WOLFFE, President.
                                            "M CALM, Secretary."

The complainants have purchased and hold these certificates, or a portion of them, paying therefor various sums, from 20 cents on the dollar and over. No bonds or mortgage were entered until the third day of January, 1883, when the company, by its president and secretary, executed a mortgage on the property and franchises of the company to secure the payment of bonds thereafter to be executed.   This mortgage was filed for record in the proper counties between the twenty-fifth of January and second of February, 1883.   On the twenty-third day of June, 1882, a contract was entered into between the company, acting through its president, Wolffe, and Green, Hamilton & Co., by which the latter agreed to construct the road from Memphis to Holly Springs at stipulated prices, to be paid in first mortgage bonds of the company at 90 cents on the dollar.

At the time this contract was made, or afterwards, it does not clearly appear which, Wolffe individually agreed to 'cash the bonds, or rather certificates, for their delivery at 90 cents on the dollar, and did so for all the work done and materials furnished up to November 1, 1882, amounting in bonds to $75,000.   The certificates were transferred to Wolffe.   For the estimates for November and December, 1882, Green, Hamilton & Co., though tendered, declined to receive certificates for the reason that Wolffe was unable to cash them, as before; Wolffe, however, paid them in cash $20,039.39, and gave

them the acceptance of the company, indorsed by him individually, for the balance of the estimates for these months, but which acceptances have been duly protested and remain due and unpaid.

On the first of January, 1883, Wolffe being unable to advance more money, the contract was changed between the company and Green, Hamilton & Co., by which the former contract was annulled and set aside, and the materials furnished, and the work thereafter to be done, was to be made in cash by the company. Under this last contract work progressed until in March or April following, but without any payment for the same, and all of which remains due and unpaid. The work was stopped by order of the company, and the failure of the contractors to complete the work was caused by the failure of the company to meet its obligations. The defendant, the Indianapolis Rolling Mill Company, furnished a large portion of the iron rails which have been placed on the road at stipulated prices, and for only a small portion of the same has any payment been made. Wolffe, as president of the company, employed engineers and other employes in the construction of the road, and for whose services no payments have been made, amounting to something over $12,000.

Green, Hamilton & Co., The Indianapolis Rolling Mill Company, and Wolffe, on behalf of these unpaid employes, instituted proceedings in the circuit court of Marshall county, in this state, against the Memphis, Selma & Brunswick Railroad Company, to enforce the statutory liens given by the laws of Tennessee and Mississippi for work and labor done and materials furnished in the construction of railroads and improvements and buildings. These causes were removed to this court, and judgments upon the law side of the docket of this court were, on the twenty-second day of January, 1884, rendered in their favor, respectively, as follows: In favor of Green, Hamilton & Co. for $191,125.61, with costs; in favor of Indianapolis Rolling Mill Co. for $69,153.65, with costs; and in favor of Wolffe, on behalf of said unpaid employes, for $13,508.52, with costs. Each judgment was declared to be a co-ordinate lien with the others upon the property and franchises of said company.

These facts are about all that need be stated, and present, among other things, a curious state of inflation and contraction of estimated value. *First.* The property was only worth $10,000; in a week or two it swelled to be worth $265,000; in about the same time the owners were willing to accept one-fourth that sum; then in less than that time a sale is made at $265,000, the payment to be secured beyond a doubt; but the holder of the obligation for payment was willing in some cases to take one-fifth the amount, and so parted with his supposed valuable rights; then, after about $400,000 in materials and labor had been added, the whole property, etc., was estimated at only $250,-000. The complainants, in their original and amended bills, and who are the holders of the certificates given by Wolffe to Forrest, allege that these certificates have all the force and effect of the bonds agreed to be issued, and that the court will regard the mortgage for their payment as having been executed at the execution and delivery of the certificates. In other words, that the court will consider all as having been done which was required to be done, and will in equity create the bonds and mortgage to secure their payment, and declare this mortgage as creating a superior lien prior in date to the liens of those claiming these statutory liens. Since these proceedings have

been commenced, by agreement of all parties, the present cash value of property and franchise, subject to the liens, have been estimated at the sum of $250,000, and is to be considered as a fund in court of this amount, subject to the further orders and decrees of the court in this cause.

It is conceded that the judgment in favor of the Indianapolis Rolling Mill Company is superior and prior to that of complainants, and, if this concession was not made, it is evident to my mind that it is such prior lien and need not be further considered. There is more doubt in regard to the judgment in favor of Wolffe in behalf of the employes, but in my opinion in equity they should have a prior lien to complainants, as it was, only in part their labor which enhanced the value of the property really beyond $10,000, and besides the complainants do not seriously controvert their claim. The controversy is thus narrowed down to the questions arising between complainants and Green, Hamilton & Co.

The first question to be determined between them is the effect to be given to the certificates upon which complainants base their claim. To make them binding obligations upon the part of the corporation they must have been authorized upon the part of the stockholders, or the directory of the company, or must have been within the scope of the business of the company and powers of the president and secretary, or, by some clear and unmistakable act on the part of the stockholders and directory, ratified and confirmed. There can be no authority found by any action upon the part of either the stockholders or board of directors for their issuance. The contract was not made upon the part of the corporation, but was an individual contract between Forrest and Wolffe, and the fact that Wolffe added the word "president" to his name, and that the certificates were countersigned by Calm with the addition to his name of the word "secretary," and that the seal of the corporation was affixed to them, did not change them from an individual to a corporation liability. Forrest, who took them, knew their true character, and they not being unimpeachable commercial paper the complainants can set up no greater rights under them than Forrest could have done had he remained the holder. They are simply promises upon the part of Wolffe at a future day to deliver to Forrest, or his order, a $1,000 first mortgage bond each, in payment for the capital stock purchased, and nothing more.

There was no authority to issue bonds or to incumber the property and franchises of the company for any other purpose than to be used in the construction and equipment of the railway, and until they were so used, and thereby became a circulating medium, their use for any other purpose would have been unlawful as between Wolffe and those receiving them from him, or having a knowledge of their unlawful use, which Forrest would have had, and also the holders, if, as it is contended, the understanding was that the bonds were to be immediately issued and delivered to Forrest or the holders; and certainly

no greater effect can be given to the certificates or their use than the bonds had they been issued and immediately delivered to Forrest or his order.

I am satisfied that this court, under the facts, has no power to convert these certificates into bonds, and to create an equitable mortgage to secure their payment. But notwithstanding this is so, Forrest had a right to sell, and Wolffe to purchase, this capital stock, to be paid for in such mortgage bonds as the company might thereafter lawfully issue,—which means to be issued and used for the payment of the construction and equipment of the railway. The only bonds shown to have been so issued and used are the 75 bonds for $1,000 each that were issued in payment for the work done and materials furnished by Green, Hamilton & Co. up to the first of November, 1882, the certificates for which were transferred to Wolffe. This bill is filed in part to compel Wolffe to comply with his contract in delivering the bonds contracted to be delivered, and as the bonds are in court their beneficial interest will be decreed to be in complainants, and they entitled to their payment out of such portion of the fund in court as may not be subject to a prior claim, or a *pro rata* share with those standing in the same relation to this fund.

The first contract between the company and Green, Hamilton & Co. was that they were to take in payment first mortgage bonds at 90 cents upon the dollar; this was the only contract between the company and them. The contract with Wolffe to cash them, or the certificates for them, was a personal obligation on his part, and for its breach he alone is responsible. The promise to receive bonds in payment having long years to run is inconsistent with the idea of reserving a statutory lien upon the property of the corporation for payment, and Green in his deposition, and who was the active partner in making the contract, tacitly admits, and gives as a reason for changing the contract to a moneyed obligation, that it was to secure the statutory lien; and this is borne out by the fact that the work was continued so long after payment ceased, which they certainly would not have done but for a reliance upon the statutory lien. I am satisfied that Green, Hamilton & Co. are entitled to a lien upon the fund in court for all the materials furnished and work done on the railway after the change of the contract made the first of January, 1883. This change in the contract the parties had a complete right to make. This lien was not displaced by the execution of the mortgage, as neither Forrest nor the holders of these certificates are purchasers or incumbrancers without notice, and the statutory lien holds good as to all others.

The acceptance of the acceptances given by the company, and indorsed by Wolffe, and received as a means of payment by Green, Hamilton & Co., were not a payment; and, not having been paid, I am satisfied that Green, Hamilton & Co. should be treated as though they now hold the bonds contracted to be received for the materials

furnished, and work and labor done, prior to the first of January, 1883, in the construction of the railway, and for which payment has not been made; and that upon this sum, whatever it may be, they are entitled to share *pro rata* with complainants in whatever fund may remain of the $250,000, after the satisfaction of prior demands upon it.

The result is that the cause must be referred to a master to take and state an account of the sums due the several parties under the statutory liens, as stated; and, after deducting these sums and any others chargeable for costs from the fund in court, then divide the surplus that may be found *pro rata* between Green, Hamilton & Co. and the complainants, and then the sum found due the complainants divided *pro rata* between them, according to the amounts respectively due each, and report the result to this term of the court.